UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **DARLA PALACIO SAMBISSA,** *as next friend of Christopher Sambissa,*<br><br>*Petitioner*,<br>v.<br><br>**KRISTI NOEM,** *Secretary, United States Department of Homeland Security*;[1]<br>**TODD LYONS,** *Acting Director, United States Immigration & Customs Enforcement*; and<br>**HECTOR MELCHOR,** *Acting Director, El Paso Immigration Processing Center*,<br><br>*Respondents.* | EP-25-CV-00237-DCG |

## ORDER DENYING MOTION TO TRANSFER VENUE

For the following reasons, the Court **DENIES** Petitioner Darla Palacio Sambissa's motion to transfer this case to the U.S. District Court for the District of New Mexico.

---

[1] The Petition identifies Secretary Noem as the "*Acting* Secretary" of DHS. *See* Pet., ECF No. 1, at 1, 3 (emphasis added). The Court has modified the caption to reflect Secretary Noem's current title.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, not the cited document's internal pagination.

I.      BACKGROUND

A.      **Petitioner's Claims**

Petitioner has filed a habeas corpus petition on behalf of her husband, Christopher Sambissa ("Detainee"), in her putative capacity as Detainee's next friend.[2] Detainee is a U.K. citizen[3] who entered the United States in 2019 under the Visa Waiver Program ("VWP").[4] The VWP "permits alien visitors" from specified countries to "enter the United States . . . for a period not exceeding 90 days without obtaining a nonimmigrant visa," but only if they "waive[] . . . [their] right to contest, other than on the basis of an application for asylum, any action for removal" from the country.[5]

Detainee stayed in the United States for several years after his permission to remain in the country lawfully had expired.[6] Immigration authorities therefore apprehended Detainee on

---

[2] *See, e.g.*, *id.* at 3.

The Court does not now decide whether Petitioner satisfies the legal requirements for "next friend" standing. *See* Resp. Pet., ECF No. 3, at 1, 4–6 (arguing that Petitioner "has not sufficiently proven her standing as [Detainee's] 'next friend,'" and asking the Court to "reconsider [its] preliminary finding" to the contrary); *see also, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990) (outlining the legal prerequisites for "next friend" standing).

[3] Although the first page of the Petition says that Detainee is a "United *States* Citizen," *see* Pet. at 1 (emphasis added), that appears to be a typo. *See id.* at 4 (identifying Detainee as "a *UK* citizen" in a later part of the same document (emphasis added)); Pet'r's Reply, ECF No. 23, at 2 (similarly identifying Detainee as "a *UK* citizen born in the Republic of the Congo" (emphasis added)).

[4] *Compare* Resp't's Suppl. Resp. Ex. A, ECF No. 15-1, at 1 (listing Detainee's admission code as "WT"), *with, e.g.*, *Nardea v. Sessions*, 876 F.3d 675, 678 (4th Cir. 2017) (explaining that "WT" stands for "Visa Waiver, Tourist").

[5] *E.g.*, *Lavery v. Barr*, 943 F.3d 272, 273 (5th Cir. 2019) (citation modified).

See also 8 U.S.C. § 1187; 8 C.F.R. §§ 217.1–.7.

[6] *See, e.g.*, Pet. at 4; Mot. Prelim. Inj., ECF No. 14, at 2.

June 12, 2025.[7]  As far as the record reveals, Detainee has been in the Government's custody ever since.[8]

Petitioner claims that the Government is unlawfully:

(1)     holding Detainee "incommunicado," without letting him communicate with his family or legal counsel;[9]

(2)     confining Detainee without issuing a charging document or otherwise following required processes;[10]

---

[7] *See, e.g.*, Pet. at 4.

[8] *See, e.g.*, Resp. Pet. at 7 ("It is uncontested that [Detainee] has been in ICE custody since June 12, 2025.").

[9] *See, e.g.*, Pet. at 2 ("Respondent's [sic] have held [Detainee] virtually incommunicado.  He was denied all contact with the outside world for the first nine days [of his confinement]—including from family and counsel—and since then has been permitted him [sic] only a five-minute phone call with his wife.").

*But see* Resp. Pet. Ex., ECF No. 3-1, at 3 (immigration records stating that Detainee "was offered a phone call . . . which he declined," and that he "was advised of his right to speak with a Consular Officer from his native country of United Kingdom").

[10] *See, e.g.*, Pet. at 2 ("[A]lthough Respondents have ostensibly held [Detainee] under the color of immigration laws, they have incarcerated him for two weeks without issuing a charging document and without taking steps to determine whether he is entitled to remain in the United States.  Even as of today, they have assigned no deportation officer to his case, and appear nowhere near scheduling him for a bond hearing before an Immigration Judge.").

*But see* Resp. Pet. at 2 (arguing that because Detainee entered the country pursuant to the VWP and thereby waived his right to contest his removal from the United States, he "is not entitled to a Notice to Appear (NTA) for a hearing before an immigration judge to contest his removal charge, nor is he entitled to a bond hearing"); *id.* at 7 (disputing Petitioner's assertion "that ICE is holding [Detainee] without notifying him of his charges and without any removal authority," and representing that "ICE issued and served [Detainee] with a final administrative order of removal under the VWP" "[o]n or about June 23, 2025").

(3) keeping Detainee in conditions that Petitioner characterizes as "horrific";[11] and

(4) threatening to remove Detainee from the country even though he allegedly has a pending application to adjust his immigration status based on his marriage to a U.S. citizen.[12]

Petitioner thus asks the Court to order Respondents to release Detainee immediately—or, barring that, to order Respondents to remedy the alleged legal violations outlined above.[13]

---

[11] *See* Pet. at 4–5, 9–10; *see also* Pet. Ex. A, ECF No. 1, at 14–45.

*But see infra* notes 31–32 and accompanying text (explaining that Petitioner's challenge to the conditions of his confinement in El Paso may be moot now that the Government has moved him to another facility); *see also* Resp. Pet. at 10 (arguing that "conditions of confinement claims are not cognizable under habeas" in any event (citation modified)).

[12] *See* Mot. Prelim. Inj. at 2–3 ("[Detainee] married [Petitioner], a United States citizen, establishing a qualifying relationship fort [sic] an Adjustment of Status application.  On or about March 30, 2025, he formally submitted [forms to adjust his status] . . . .  His application is currently pending adjudication . . . .  Despite the active pendency of his Adjustment of Status application, [Detainee] was arrested by [ICE] agents . . . .  ICE agents communicated to [Detainee] their intention to deport him . . . . despite the ongoing pendency of his Adjustment of Status application.  This assertion of impending removal without judicial review directly conflicts with his pending application for relief.").

*But see* Resp. Pet. at 3 (stating, contrary to Petitioner's assertion, that "ICE records did *not* reveal any pending immigration benefit petitions or applications filed on [Detainee's] behalf" (emphasis added); Pet'r's Reply Ex. C, ECF No. 23, at 15–17 (reflecting that Detainee's application to adjust his immigration status was "not . . . considered properly filed" because he didn't pay the required fee).

[13] *See* Pet. at 2 ("Under these unique circumstances, the Constitution requires [Detainee's] immediate release from further imprisonment.  At minimum, this Court should order [Detainee]'s immediate release unless, within 24 hours, Respondents grant him reasonable access to an attorney and family, charge him under the immigration [sic] and begin processing his case, and move him to a facility appropriate for longer-term confinement.").

B.   **Petitioner's Motion to Transfer Venue**

At the time Petitioner filed the Petition on Detainee's behalf, the Government was holding Detainee at a processing facility in El Paso, Texas.[14] Petitioner thus filed this case in the U.S. District Court for the Western District of Texas.[15]

While this case was pending, however, the Government relocated Detainee to an immigration detention facility in New Mexico.[16] Petitioner therefore moves to transfer this case to the U.S. District Court for the District of New Mexico.[17] Petitioner urges this Court to rule on her Motion to Transfer Venue before deciding any of the substantive issues in this case.[18]

---

[14] *See id.* at 3 (alleging that, as of June 30, 2025, Detainee was "incarcerated at the El Paso [Service] Processing Center ('EPSPC') in El Paso").

[15] *See, e.g., id.* at 1.

[16] *See, e.g.*, Resp. Pet. at 3–4 ("On or about July 3, 2025, ICE transferred [Detainee] from El Paso, Texas, to the Torrance County Detention Facility . . . located in Estancia, New Mexico, where he remains detained pending the issuance of a travel document.").

[17] *See* Mot. Transfer Venue, ECF No. 10, at 1–3.

[18] *See* Pet'r's Reply at 2 ("[I]t is imperative for this Court to resolve the venue issue prior to making any substantive decisions regarding [this] habeas matter. The change in [Detainee]'s detention location necessitates a reassessment of the appropriate jurisdiction to ensure that his legal rights are adequately protected.").

## II. DISCUSSION

### A. Applicable Law

"For the convenience of parties and witnesses," and "in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."[19] A district court has "broad discretion" to decide whether or not to transfer a case.[20]

### B. Detainee's Relocation to New Mexico Doesn't Deprive this Court of Power to Rule on the Petition

Petitioner first argues that "the Western District of Texas may lack jurisdiction over the [Petition]" now that the Government has moved Detainee from Texas to New Mexico.[21]

The underlying premise of that argument is incorrect. Supreme Court precedent establishes that when a person detained in District A files a habeas corpus petition in District A, the court in District A doesn't lose the power to rule on that petition if the Government

---

[19] 28 U.S.C. § 1404(a); *see also* Mot. Transfer Venue at 1–2 (explicitly invoking § 1404(a) as the legal basis for Petitioner's Motion to Transfer Venue).

A habeas corpus proceeding qualifies as a "civil action" under the venue transfer statute. *See, e.g.*, *Wilson v. Thomas*, No. 1:12-CV-1693, 2012 WL 4484932, at *1 (M.D. Pa.) ("Federal habeas corpus proceedings are essentially civil proceedings, and as such are governed by the statutes and rules which apply generally to civil litigation. Thus, . . . such petitions are . . . subject to the general rules governing venue in civil litigation, including Title 28 U.S.C. § 1404(a) . . . ." (citation modified), *report and recommendation accepted by* 2012 WL 4482766 (M.D. Pa. Sept. 27, 2012); *Verissimo v. INS*, 204 F. Supp. 2d 818, 820 (D.N.J. 2002) (similar); *Foley v. Martinez*, No. 2:11-CV-136, 2011 WL 6026166, at *2 (D. Vt. Dec. 1, 2011) (similar).

[20] *See, e.g.*, *In re Planned Parenthood Fed'n of Am.*, 52 F.4th 625, 629, 632 (5th Cir. 2022).

[21] *See* Mot. Transfer Venue at 2.

subsequently moves the petitioner to District B.[22]  Thus, Detainee's post-filing relocation to New Mexico didn't divest the Western District of Texas of jurisdiction over the Petition.[23]

C. **The Court Exercises its Broad Discretion to Deny Petitioner's Motion to Transfer Venue**

The question, then, is not whether the Court *must* transfer the Petition to New Mexico, but rather whether it *should* transfer the Petition in the exercise of its broad discretion.  When deciding whether to transfer a habeas corpus petition to another district, courts often consider:

(1) "where records and witnesses pertinent to the petitioner's claim are likely to be found";

(2) "the relative convenience of the forum for the parties"; and

(3) "where all material events took place."[24]

Courts may also consider whether transferring the petition would promote judicial economy.[25]

---

[22] *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("When the Government moves a habeas petitioner after she properly filed a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." (citation modified)).

*See also, e.g.*, *Mason v. Alatary*, No. 9:23-CV-0193, 2023 WL 2965619, at *3 (N.D.N.Y. Apr. 17, 2023) ("Because jurisdiction attaches on the initial filing for habeas corpus relief, the court maintains its jurisdiction even when a petitioner is transferred to a different judicial district." (citation modified)).

[23] *See, e.g.*, *Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on th[e] initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change.").

As explained below, however, Respondents claim that *no* federal court has subject-matter jurisdiction to decide some or all of the issues in the Petition.  *See infra* Section II.C.1.a.  The Court does not now decide whether that's correct; the Court merely concludes that it didn't *lose* whatever jurisdiction it has when the Government transferred Detainee to New Mexico.

[24] *Chen v. Holder*, No. 6:14-2530, 2015 WL 13236635, at *3 (W.D. La. Nov. 20, 2015)

*See also, e.g.*, *Mustafa v. Gonzales*, No. 07-537, 2007 WL 2746828, at *2 (M.D. La. Sept. 19, 2007) (citation modified); *Somir v. United States*, 354 F. Supp. 2d 215, 218 (E.D.N.Y. 2005).

[25] *See, e.g.*, *Rounds v. Krueger*, No. 2:18-cv-00208, 2019 WL 132598, at *1 n.1 (S.D. Ind. Jan. 8, 2019).

### 1.     Judicial Economy

For the following reasons, judicial economy considerations strongly disfavor transferring this case to New Mexico.

### a.     Retaining this Case Would Obviate the Need to Answer the Difficult, Unsettled Question of Whether a Court Must Confirm that Subject-Matter Jurisdiction Exists Before Transferring a Case

First and foremost, keeping the Petition in the Western District of Texas would save judicial resources by obviating any need for this Court to decide a complex, difficult legal issue that has split the Fifth Circuit's District Courts.

As background, Respondents have raised weighty arguments that this Court—and, for that matter, *all* federal district courts, including the District of New Mexico—lack subject-matter jurisdiction to adjudicate some or all of the issues in the Petition.  First, as a threshold issue, Respondents dispute that Petitioner has satisfied the legal prerequisites to act as Detainee's "next friend."[26]  That question goes to whether Petitioner has standing to maintain this suit under Article III of the U.S. Constitution[27]—which in turn dictates whether *any* federal district court would have subject-matter jurisdiction to decide *any part* of the Petition.[28]

---

[26] *See, e.g.*, Resp. Pet. at 1 (arguing that Petitioner "has not sufficiently proven her standing as 'next friend'").

*See also, e.g.*, *Whitmore*, 495 U.S. at 163–64 ("Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for 'next friend' standing.  First, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action.  Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." (citations omitted)).

[27] *See, e.g.*, *Francis v. Warden, FCC Coleman-USP*, 246 F. App'x 621, 622 (11th Cir. 2007) ("Absent 'next friend' status, an individual lacks Article III standing to file a petition on another's behalf, thus stripping the district court of jurisdiction to consider the petition.").

[28] *See, e.g.*, *Abraugh v. Altimus*, 26 F.4th 298, 301 (5th Cir. 2022) ("If [the person filing suit] lacks Article III standing, then the district court lacks subject matter jurisdiction over her claims.").

Secondly, Congress has passed a complex, intricate statute divesting the federal district courts of subject-matter jurisdiction over certain immigration issues.[29] Respondents contend that this statute deprives the federal district courts of subject-matter jurisdiction to grant at least some of the relief that Petitioner seeks.[30]

Finally, to the extent the Petition challenges the conditions of Detainee's confinement at the immigration facility in El Paso,[31] that challenge may be moot now that the Government has moved Detainee to a different facility.[32] If that's correct,[33] then *neither* this Court *nor* the District of New Mexico would have subject-matter jurisdiction to decide Petitioner's challenge to the conditions at the El Paso facility.[34]

The reason why all of that is relevant to Petitioner's Motion to Transfer Venue is because there's a massive split of authority over whether a court must confirm that subject-matter

---

[29] *See generally* 8 U.S.C. § 1252; *see also, e.g.*, *Duarte v. Mayorkas*, 27 F.4th 1044, 1054–55 (5th Cir. 2022) ("Under 8 U.S.C. § 1252, when a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, the federal district court lacks subject-matter jurisdiction.").

[30] *See* Resp. Pet. at 7 (arguing that "[w]hile the district court has habeas jurisdiction under [28 U.S.C.] § 2241 to review a custody challenge, the court lacks jurisdiction to review any issues directly related to a VWP removal order"); Resp. Prelim. Inj. Mot., ECF No. 24, at 4 (arguing that "this Court lacks jurisdiction to enjoin the execution of a final order of removal" (citing 8 U.S.C. § 1252(f)(1), (g))).

[31] *See supra* note 11 and accompanying text.

[32] *Cf., e.g.*, *Smith v. City of Tupelo*, 281 F. App'x 279, 282 (5th Cir. 2008) ("A claim for declaratory and injunctive relief based on conditions of confinement is rendered moot upon the prisoner's . . . transfer from the facility.").

[33] The Court does not decide that issue now.

[34] *E.g.*, *Robinson v. Ferguson*, 849 F. App'x 77, 79 (5th Cir. 2021) ("Mootness is jurisdictional; it determines whether a federal court has subject matter jurisdiction under Article III, Section 2 of the Constitution to hear a case.").

jurisdiction exists before the court may validly transfer a case to another district.[35] Some District Courts in this Circuit hold that a court "*cannot* consider a venue transfer [motion] without first determining that it has subject-matter jurisdiction over the case."[36] Others hold that "a court *can* address a transfer motion before addressing subject matter . . . jurisdiction because a ruling on a motion to transfer . . . is not a decision on the merits."[37]

Thus, before the Court could transfer this case to New Mexico as Petitioner requests, the Court would first have to analyze that expansive body of caselaw, take a side on the split of authority, and draft an opinion explaining the Court's reasons for adopting one position and

---

[35] *See, e.g.*, *Shredder Co. v. Riverside Eng'g, Inc.*, No. 3:08-CV-00310, 2008 WL 11411968, at *1 (W.D. Tex. Oct. 7, 2008) (noting the split and citing cases on both sides).

[36] *See Miller v. Warren Transp., Inc.*, No. 5:18-CV-00173, 2019 WL 11593056, at *1 (S.D. Tex. Feb. 7, 2019) (emphasis added) (citation modified).

*See also, e.g.*, *Sanders v. ExxonMobil Corp.*, No. 5:08-CV-00590, 2008 WL 11417386, at *4 (W.D. Tex. Sept. 30, 2008) ("The transferring court must have subject matter jurisdiction before the court may transfer a cause of action under Section 1404(a)." (citation modified)); *Ray Mart, Inc. v. Stock Bldg. Supply of Tex., LP*, 435 F. Supp. 2d 578, 584 (E.D. Tex. 2006) ("A federal court cannot transfer a case if subject matter jurisdiction does not exist.").

[37] *See KeyCity Cap., LLC v. Davenport Invs., LLC*, No. 3:21-CV-2046, 2022 WL 581146, at *2 (N.D. Tex. Feb. 25, 2022) (emphasis added) (citation modified).

*See also, e.g.*, *McCormick v. Payne*, No. 3:15-cv-02729, 2015 WL 7424772, at *1 (N.D. Tex. Nov. 23, 2015) ("Courts may reach questions of venue prior to determining subject matter jurisdiction. As the Supreme Court has noted, jurisdiction is vital only if the court proposes to issue a judgment on the merits. A decision to transfer a case is not a merits decision. Thus, where a case is filed in the wrong forum, courts are authorized to take the less burdensome course and transfer the case, rather than address subject matter jurisdiction." (citation modified)); *Hamrick v. Feldman*, No. 4:12-cv-2139, 2013 WL 12098757, at *3 (S.D. Tex. Jan. 15, 2013) ("[T]he court concludes that it is unnecessary to resolve the issue of subject matter jurisdiction prior to ruling on the motion to transfer venue.").

The correct answer to that question likely depends on whether a motion to transfer venue is analogous to a motion to dismiss on *forum non conveniens* grounds. The Supreme Court has held that a court may grant the latter without first assessing whether subject-matter jurisdiction exists. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter . . . jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."). *But see id.* at 430 (noting potentially relevant distinctions between the *statutory* venue transfer mechanism and the *common-law* doctrine of *forum non conveniens*).

rejecting the other.  That would consume substantial judicial resources.  By contrast, if the Court instead exercised its broad discretion to simply deny Petitioner's Motion,[38] that would obviate any need for the Court to decide that complex, contested legal issue.  To that extent, denying the Motion to Transfer would promote judicial economy.

There's also a second way in which taking a side on that split of authority could create significant inefficiencies.  Suppose that, after analyzing the relevant statute and cases, this Court ultimately concluded that it *can't* transfer this case before determining whether federal subject-matter jurisdiction exists.[39]  This Court would then have to decide some or all of the three issues identified above, and then dismiss any claims over which the federal district courts lack jurisdiction.[40]  Depending on how the Court ruled on those questions, there might not be much (or any) of this case left to transfer to the District of New Mexico.[41]  At that point, the Court would be so deeply enmeshed in this case that it wouldn't be efficient to ship this case to a different court.

In sum, this Court may have to decide a bevy of jurisdictional issues *regardless* of whether it transfers this case to New Mexico.  The most efficient use of judicial resources is thus to deny the Motion and have this Court resolve all dispositive jurisdictional and non-jurisdictional issues in the first instance.

---

[38] *See supra* note 20 and accompanying text.

[39] *See supra* note 36 and accompanying text.

To be clear, the Court takes no position on that question today.  Nor does the Court mean to imply that it would adopt that position if the Court ever needed to decide the issue definitively.

[40] *See supra* notes 26–34 and accompanying text.

[41] Here too, this Order doesn't take or imply any position on whether Respondents' jurisdictional arguments have merit.

### b. Other Judicial Economy Considerations Favor this Court Retaining the Case

There's also another consideration that favors keeping this case here: the Petition is already fully briefed,[42] and this Court has already reviewed the parties' filings and preliminarily researched the relevant legal issues. If the Court transferred this case to the District of New Mexico, much of this Court's efforts analyzing the parties' briefing and the relevant caselaw would have been wasted, and the transferee court would have to duplicate this Court's efforts by analyzing all the issues and arguments from scratch.[43] In that respect, keeping this case here would be the most efficient use of judicial resources.

### 2. Location of Witnesses and Records

The Court next considers "where records and witnesses pertinent to . . . [P]etitioner's claim are likely to be found."[44] The Court readily acknowledges that a key witness—namely, Detainee—is in New Mexico, not Texas. Detainee's physical presence in New Mexico isn't dispositive, however. Detainee's current facility is only a four-hour drive from the El Paso courthouse.[45] Respondents haven't objected that it would be inconvenient to transport Detainee

---

[42] *See* Pet.; Resp. Pet.; Pet'r's Reply.

[43] *Cf., e.g.*, *Lallave v. Martinez*, 609 F. Supp. 3d 164, 172–73 (E.D.N.Y. 2022) (declining to transfer habeas corpus petition to another district partly because "the issues in th[e] [p]etition" had already "been fully briefed"); *Rounds*, 2019 WL 132598, at *1 n.1 ("Because this case [is] briefed and ripe for resolution . . . the Court finds that, in the interest of justice and judicial economy, a change in venue is not warranted.").

[44] *See supra* note 24 and accompanying text.

The Court has not yet determined whether it must conduct an evidentiary hearing with live witnesses to resolve the Petition, or if the Court may instead decide the Petition on the papers.

[45] *See* Mot. Transfer Venue at 3 (noting that Detainee is currently confined at "the Torrance Detention Center in New Mexico").

to El Paso if it became necessary to produce him for a hearing.[46]  Thus, even if transferring this case to New Mexico would make things somewhat more convenient for Detainee, that marginal advantage wouldn't outweigh the significant judicial economy concerns outlined above.[47]

Moreover, *neither* Texas *nor* New Mexico would be a particularly convenient forum for any of the *other* potential witnesses whom the parties have identified in their briefing.  For example, one of the factual issues that the deciding court might have to resolve here is whether Detainee suffers from cognitive disabilities that prevented him from knowingly and voluntarily waiving his rights to contest his removal.[48]  As far as the record reveals, the witness best equipped to testify about Detainee's mental status is in California,[49] and another witness who

---

[46] *See* Resp. Prelim. Inj. Mot. at 4 n.3 (opposing Petitioner's request to transfer this case to New Mexico).

[47] *See supra* Section II.C.1.

[48] *See, e.g.*, Pet'r's Reply, ECF No. 23, at 2 (claiming that Detainee "suffers from severe cognitive deficits that hinder his ability to process and understand information presented to him"); *id.* at 3–4 ("The Respondents' opposition to the Habeas Petition hinges on the assertion that [Detainee] waived his right to judicial review of a final order of removal by entering the United States under the Visa Waiver Program (VWP).  However, . . . the VWP *does not* automatically negate an individual's right to seek judicial review . . . . Courts have consistently held that a waiver must be made knowingly and voluntarily . . . . [Detainee's] cognitive limitations hindered his ability to fully grasp the nature and consequences of the waiver. . . . This lack of understanding raises serious concerns about the voluntariness of his consent and whether it was truly informed."); Pet'r's Reply Ex. A, ECF No. 23, at 9–10 (letter from Detainee's counselor averring that Detainee "lives with cognitive disabilities that include limited short-term memory, difficulty with executive functioning, processing delays, and language comprehension deficits" (emphases omitted)).

*See also, e.g.*, *Nose v. Attorney General*, 993 F.2d 75, 79 (5th Cir. 1993) (holding that an alien's waiver of his or her right to contest removal "must be made knowingly and voluntarily," and listing factors to consider when determining whether a particular waiver was knowing and voluntary).

*But see* Resp. Prelim. Inj. Mot. at 2 n.2 (arguing that Petitioner's claim that Detainee "did not knowingly or voluntarily waive his right to judicial review under the VWP" is (1) "precluded for not having been raised in the habeas petition itself, or even in the motion for preliminary injunction"; and (2) "not justiciable in the district court as a matter of law").

[49] *See* Pet'r's Reply Ex. A at 9–10 (letter from Detainee's counselor in California).

could potentially testify about that issue is in the United Kingdom.[50] It's not obvious that New Mexico would be a more convenient forum than Texas for either of those potential witnesses.

As for the location of *documentary records* (as contrasted with the location of *live witnesses*), the docket doesn't conclusively establish where Detainee's immigration records are physically located.[51] In any event, the physical location of documents is minimally relevant now that computers, scanners, and the Internet make it easy to transfer documents across the country.[52]

In sum, the "location of witnesses and documents" factor favors transfer only negligibly, if at all.

### 3. Relative Convenience for the Parties

The Court next considers "the relative convenience of the forum for the parties."[53] The Court again concedes that New Mexico would be a more convenient forum for Detainee. For the same reasons set forth above, however, interests in judicial economy strongly outweigh whatever minor inconvenience Detainee might encounter litigating this case in Texas.[54]

---

[50] *See id.* at 11 (letter from Detainee's former mentor in Bristol, UK).

[51] While Petitioner posits that the "evidence and relevant documentation related to [Detainee]'s detention and legal status are likely to be located in New Mexico," Petitioner offers nothing to substantiate that assertion. *See* Mot. Transfer Venue at 2. It seems just as likely that at least some evidence relevant to Detainee's *detention* would be in El Paso where he was initially confined, and that evidence pertaining to Detainee's *legal status* would be in some centralized depository of agency records elsewhere in the country.

[52] *See, e.g.*, *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 496 (S.D.N.Y. 2009) ("While it is unclear where [the petitioner]'s immigration records are available, with the advantages of modern technology, including faxes, scanners, and email, the difficulty of transferring the required immigration records ought to be minimal." (citation modified)).

[53] *See supra* note 24 and accompanying text.

[54] *See supra* notes 45–47 and accompanying text.

It's also not obvious that transferring this case to New Mexico would be more convenient for any of the parties. Petitioner lives in California,[55] and would presumably find it burdensome to travel to *either* New Mexico *or* Texas if a District Judge required her presence at a hearing.[56] Respondents, meanwhile, appear to prefer that this case remain in Texas.[57]

Thus, on balance, the "convenience for the parties" factor doesn't weigh strongly in favor of transferring this case either.

### 4. The Location of Material Events

The final factor—"where all material events took place"[58]—doesn't favor any particular forum here. Some of the events relevant to Petitioner's claims occurred in Texas,[59] others occurred in New Mexico,[60] others occurred in California,[61] and still others occurred in Nevada.[62]

---

[55] *See, e.g.*, Mot. Prelim. Inj. at 1 (listing an address in Long Beach, CA).

[56] *See* Pet. at 12 (offering to "testify to th[e] facts" alleged in the Petition "if called upon to do so").

[57] *See* Resp. Prelim. Inj. Mot. at 4 n.3.

[58] *See supra* note 24 and accompanying text.

[59] *See, e.g.*, Pet. at 4 ("[Detainee] was taken into custody and transferred to the El Paso Processing Center . . . .").

*See also id.* at 3 (acknowledging that "a substantial part of the events or omissions giving rise to [Petitioner's] claim have transpired" in the Western District of Texas").

[60] *See, e.g.*, Mot. Transfer Venue at 2 ("[Detainee] is now detained in New Mexico . . . .").

[61] *See, e.g.*, Pet. at 4 ("[O]n June 12, 2025, while driving in Los Angeles . . . [Detainee] was apprehended by ICE agents.").

[62] *See, e.g.*, Resp. Pet. Ex. at 2 ("On 01/18/2019, Customs and Border Protection (CBP) Officers admitted [Detainee] into the United States at the Harry Reid International Airport in Las Vegas, NV . . . under the Visa Waiver Program for 90 days.").

### 5. Weighing the Considerations

In sum, while the Court concedes that transferring this case to New Mexico would be slightly more convenient for Detainee, it wouldn't be more convenient for any other witness or party, and it would create tremendous inefficiencies from a judicial economy perspective. The Court thus exercises its broad discretion to deny Petitioner's Motion to Transfer Venue.[63]

## III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's "Motion for Change of Venue" (ECF No. 10). This case **SHALL REMAIN** in the Western District of Texas.

This Court will rule on Petitioner's "Emergency Motion for Preliminary Injunction" (ECF No. 14) and "Verified Petition for Writ of Habeas Corpus" (ECF No. 1) in due course.

The Clerk of Court **SHALL MAIL** this Order to the following recipients:

Christopher Sambissa
Torrance County Detention Facility
209 County Road A049
Estancia, NM 87016

Darla Palacio Sambissa
555 East Dayman Street
Long Beach, CA 90806

**So ORDERED and SIGNED this 31st day of August 2025.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[63] *See supra* note 20 and accompanying text.